UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN YOUNG,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.   2:19-cv-01952-JDP (SS)<br><br>ORDER DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ECF Nos. 15, 19 |

Colleen Young ("claimant") challenges the final decision of the Commissioner of Social Security ("Commissioner") denying claimant's application for a period of disability and disability insurance benefits. She argues that the Administrative Law Judge ("ALJ") committed reversible error in failing to backdate her application, improperly evaluating her symptom allegations, and failing to consider evidence during appropriate times in claimant's history of treatment. Both parties have moved for summary judgment. ECF Nos. 15, 19. The matter is ripe for review, and I recommend that the Commissioner's motion for summary judgment be granted and that claimant's motion be denied.

**STANDARD OF REVIEW**

An ALJ's decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, "[t]he ALJ's findings . . . must be supported by specific, cogent reasons," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and the court will not affirm on grounds upon which the ALJ did not rely, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in evaluating eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). Claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**BACKGROUND**

Claimant applied for a period of disability and disability insurance benefits on February 17, 2017, alleging disability since November 1, 2011, due to Chiari malformation, mental issues,

syringomyelia, and bowel problems. AR 511-12, 639. Her application was denied both initially and upon reconsideration. AR 511-21, 523-34. She then requested a hearing before an ALJ. The ALJ held a hearing on December 14, 2018 and issued a decision on January 14, 2019, finding that claimant was not disabled. AR 12-25.

At step one of the five-step disability-evaluation process, the ALJ found that claimant had not engaged in substantial gainful activity during the period from April 17, 2015 through her date last insured of September 30, 2015. AR 18. At step two, the ALJ found that claimant had the severe impairments of degenerative disc disease of the lumbar and cervical spine, Chiari malformation, syringomyelia, and obesity. *Id.* At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in the regulations. AR 20. Before proceeding to step four, the ALJ found that claimant's residual functional capacity ("RFC") enabled her to perform sedentary work with some limitations. AR 21-24. At step four, the ALJ found that claimant could perform past relevant work as an administrative assistant. AR 24-25.

Claimant subsequently requested review by the Appeals Council, which denied the request. AR 1-6. She now seeks judicial review under 42 U.S.C. § 405(g).

**ANALYSIS**

*Related Claims*

Claimant first argues that the ALJ erred when he failed to escalate another one of her applications—for supplemental security income under Title XVI—which was filed six days before her hearing on this application under Title II. The Hearings, Appeals, and Litigation Law Manual ("HALLEX") governs escalating a new claim that has a common issue with a claim pending appeal. "[T]he ALJ will not accept an escalated claim if: [t]he ALJ does not agree that there is a common issue; [or f]or other reasons, the ALJ does not find it appropriate to join the claims." HALLEX § I-2-2-22. The Ninth Circuit has held that HALLEX does not impose

judicially enforceable duties.[1]  *See Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (citing *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000)).

In addition to seeking to join a newer claim, claimant argues that it was error not to reopen a prior claim under 20 C.F.R. §§ 404.987-989 because her alleged onset date fell within a previously adjudicated period.  A previously adjudicated period can be opened within four years for good cause based upon new and material evidence; the ALJ here did not find good cause to re-open.  20 C.F.R. §§ 404.988-989.  Although section 404.988 grants the Commissioner discretion to reopen final decisions, it does not impose an affirmative obligation on the Commissioner to do so.[2]  *See Taylor v. Heckler*, 765 F.2d 872, 877 (9th Cir.1985) ("The Secretary's decision to reopen a claim is purely discretionary.").  "Because a denial of a motion to reopen is a discretionary decision, it is not final and, thus, is not generally reviewable by a district court."  *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  An exception is made for constitutional challenges, *see Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008), but no such challenge is made here.

*Allegations of Symptoms*

Claimant argues that the ALJ did not follow the required two-step analysis to evaluate the credibility of her allegations.  Claimant alleged that her ability to work was limited by "pain, physical dysfunction, and anger."  AR 745.  She claimed to wake up in pain at a level 6 or 7, and that using her arms or hands would raise the pain to a level 8 or 9.  *Id.*  Claimant alleged that medications she tried only had "adverse effects."  *Id.*  She had problems getting along with her friends and family.  *Id.*  She claimed to be inappropriately angry, which interfered with her ability to work.  *Id.*  She also had difficulty "swallowing, breathing, coughing, and choking."  AR 746.  She had trouble focusing on tasks because she could not find a comfortable position for more than

---

[1] Even if that were not the case, here the ALJ explained that he did not join the claim because there was a "weak nexus" between the claims, considering the 39-month gap between claimant's last-insured date and her Title XVI application.  AR 15-16.

[2] Claimant alludes to the possibility that a claim might have been constructively reopened, *see* ECF No. 15 at 16, but offers no supporting argument.

five or ten minutes, so that she would have to move around and reposition herself to reduce her pain. *Id.* Claimant's testimony at the hearing was consistent with these allegations. AR 409-31.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (internal citations omitted). An ALJ must engage in a two-step analysis to determine whether a claimant's testimony concerning subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "[T]he claimant is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* Second, if there is no evidence of malingering, the ALJ may reject a claimant's testimony about the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* at 1015; *see also Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (reaffirming the application of the two-step analysis in *Garrison* after Social Security Ruling 16-3p (2016)).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citations omitted).

The ALJ followed the two-step analysis and found that claimant's "allegations are not entirely consistent with the evidence." AR 21. The record provides little support for claimant's allegations during the relevant period of April 17 to September 30, 2015. *Id.*; AR 1005-15. The ALJ considered the medical opinion evidence from state agency medical consultants. AR 21-22. These consultants opined that claimant could perform light work with some restrictions, as had been found in her most recent previous claim. AR 511-21, 523-35. The ALJ gave their opinions great weight but discounted them slightly because of claimant's allegations and her treatment under the care of a podiatrist. AR 22. The ALJ found that sedentary work was more appropriate than light work. *Id.* The ALJ also discounted claimant's allegations because her treatment notes during the relevant period indicated improvement on Lyrica, which, by September 2015, had helped her symptoms tremendously. AR 22, 1012. The ALJ offered "specific, clear and convincing reasons" for partially discounting claimant's statements about the limiting effects of her symptoms. *Garrison*, 759 F.3d at 1015. Thus, the ALJ's RFC assessment was supported by substantial evidence with clear and convincing reasons for his partially adverse credibility determination.

***Window of Time to Consider Evidence***

Claimant argues that because the ALJ found a different RFC—sedentary work—than was found on her previous claim—light work—the evidence after the relevant period, which was only five months, should have been considered more carefully. Claimant's medical evidence was scant during the relevant period, but she did see a podiatrist for treatment. AR 1005-15. On May 4, 2015, she saw Dr. Wolterbeek for foot and ankle masses. AR 1006. Claimant was given a Lyrica and told to elevate the extremity and rest. AR 1007. She followed up with the doctor on May 18. AR 1008. At both visits, plaintiff had foot tenderness and ankle swelling, but exhibited normal muscle tone, motor strength, gait, and stance. AR 1006-08. On the second visit, claimant stated that the "Lyrica helps some." AR 1008. Claimant was to continue with the plan from her first visit—elevation, rest, and Lyrica. *Id.* On September 29, she followed up again and reported that Lyrica helped her "tremendously." AR 1012. The ALJ took into account that medical evidence in making the RFC more restrictive was the recommended by the agency's reviewing

physicians. AR 21-22.

The ALJ also considered medical evidence that post-dated the relevant window of time. AR 18-23. The ALJ reviewed medical evidence from 2017 and 2018, although noting that the gap in time was problematic. AR 22. Progress notes from Ampla Health showed that claimant was treated for dysphagia symptoms beginning in February 2017. AR 1224-1313. The ALJ still found that this evidence had some probative value and relied upon a treatment note, from June 29, 2017, showing that claimant had a functional swallow and modest treatment recommendations. AR 22, 1291-94. The ALJ also considered the opinions of two treating source physicians, but gave them little weight because they concerned claimant's functioning well after the relevant period. AR 22-23. Dr. Teasdale, claimant's treating psychiatrist, opined that claimant's history of syringomyelia and Chiari malformation caused significant neuropathic pain and a complex mood disorder from "years of living with these conditions." AR 1377. Dr. Teasdale's letter is dated November 29, 2018. *Id.* Ms. Kinney, claimant's speech pathologist, provided an opinion on August 18, 2017, that claimant has been receiving speech therapy to address ongoing dysphagia deficits from Chiari malformation "with decompression surgery and 5 syrinxes since 2006." AR 2233. Ms. Kinney opined that claimant could not return to work due to ongoing cognitive and dysphagia challenges with complications. AR 2233-34. The ALJ gave "little weight" to their opinions because Ms. Kinney first evaluated claimant on June 29, 2017, and Dr. Teasdale began treating claimant in June 2018. AR 23. The ALJ discredited Ms. Kinney's statement about ongoing dysphagia since 2006 because "her own-authored progress notes show that claimant reported an onset of April 13, 2017 for coughing and choking symptoms." AR 23; *see also* AR 1292.

An ALJ may not reject the contradicted opinion of a treating doctor "without providing specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, the ALJ's discussion of his reasons for discounting the treating physicians' opinions provides specific and legitimate reasons supported by substantial evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a

reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Ultimately, the burden rests with the claimant to prove that he is disabled by furnishing medical and other evidence. *See* 42 U.S.C. § 423(d)(5); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), as amended (June 22, 1999) ("The claimant bears the burden of proving that she is disabled."). Claimant has not established that the ALJ erred in evaluating the medical opinion and other evidence post-dating the relevant window.

The ALJ's reasoning is supported by substantial evidence.

## CONCLUSION

Accordingly, the court hereby orders that:

1. the Commissioner's motion for summary judgment, ECF No. 19, is granted;

2. claimant's motion for summary judgment, ECF No. 15, is denied;

3. the decision of the Commissioner of Social Security is affirmed; and

4. the Clerk of Court is directed to enter judgment in favor of defendant Commissioner of Social Security and against claimant Colleen Young, and to close this case.

IT IS SO ORDERED.

Dated:   March 31, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE